703 S.E.2d 127 (2010)
In the Interest of V.B.L., a child.
No. A10A2028.
Court of Appeals of Georgia.
November 3, 2010.
*128 McCamy, Phillips, Tuggle & Fordham, Curtis A. Kleem, Dalton, for appellant.
Elinor H. Portivent, Philip F. Woodward, Dalton, for appellee.
JOHNSON, Judge.
Donna Smith, the maternal grandmother and legal guardian of V.B.L., appeals from a juvenile court order granting a petition filed by Lucius Christian, the child's biological father, to legitimate the child. Smith claims that the juvenile court erred in (i) applying the wrong standard in determining whether Christian had abandoned his interest in developing a relationship with the child, and (ii) determining that legitimation was appropriate based upon Christian's fitness as a parent rather than upon a consideration of what was in the best interest of V.B.L. Because we find that the juvenile court erred, we reverse the judgment below and remand this case to the juvenile court for proceedings consistent with this opinion.
This Court must review a juvenile court's ruling on a legitimation petition for abuse of discretion.[1] Here, the undisputed evidence shows that Brandy Smith met Christian while she was visiting Daytona Beach, Florida in 1999. Christian testified that he thought he met Brandy at a bar, that he spent "a couple of hours" with her before they had sexual intercourse, and that "it may have been sun-up or whatever" when they "parted way" the following morning. Christian never learned Brandy's last name, although he acknowledged that "she might have mentioned it"; and he admitted that her last name was not very important to him at the time. Christian testified that the only thing he knew about Brandy, other than her first name, was that she was from the Dalton area.
V.B.L. was born on May 25, 2000, and Brandy identified Barry Lewis as V.B.L.'s biological father even though she was married to Anthony Nance. On March 11, 2003, the juvenile court found that V.B.L. was deprived and granted temporary custody to Donna Smith. On March 2, 2005, the juvenile court found that V.B.L.'s parents had failed to support or maintain contact with her, and it extended Smith's custody of V.B.L. for an additional two years. After making similar findings on February 27, 2007 and again on February 6, 2009, the juvenile court granted custody to Smith for additional two-year periods.
On August 31, 2009, Smith filed a motion to terminate the parental rights of Brandy, Lewis, and Nance so that she could adopt V.B.L. At approximately the same time, Brandy contacted Christian through a social networking website. Brandy told Christian that she was "losing her parental rights" to V.B.L. and "request[ed] his assistance."
In November 2009, Christian filed a motion to intervene in Smith's action and to determine the paternity of V.B.L. The juvenile court granted Christian's motion; and, once DNA testing confirmed that Christian is V.B.L.'s biological father, Christian filed a petition to legitimate. After the juvenile court granted Christian's petition, Smith filed an application for discretionary appeal, which we granted.
1. Smith claims that the juvenile court applied the wrong standard in determining whether Christian abandoned his interest in developing a relationship with V.B.L. Before granting a petition to legitimate,
the court must initially determine whether the father has abandoned his opportunity interest to develop a relationship with the child. Then, depending on the nature of the putative father's relationship with the child and other surrounding circumstances, the standard for evaluating whether legitimation is appropriate is either a test of his fitness as a parent or the best interest of the child.[2]
*129 In In re Baby Girl Eason, the Supreme Court of Georgia recognized "that there exists a continuum" regarding the interests of unwed biological fathers: ranging from those who take on parental duties and form emotional bonds with their child, and those who do not live with the mother or child, never offer to marry the mother, do not support the child, and fail to register as the father with the state.[3] Although not addressed in Eason, another relevant factor affecting placement on the continuum would likely include whether the father's failure to support and develop a relationship with the child was attributable in some part to actions taken by the mother to impede the father's ability to learn of the child's existence.
Here, in considering whether Christian had abandoned his interest in developing a relationship with V.B.L., the juvenile court refused to consider Christian's actions between the time of his 1999 sexual encounter with Brandy and his 2009 discovery that Brandy had given birth to V.B.L. This Court considered similar issues in LaBrec v. Davis, which reversed a juvenile court order granting a biological father's petition to legitimate.[4] In LaBrec, we found that the biological father's "opportunity interest" in the child commenced "about nine months before [the child's] birth" even though the mother falsely claimed that another man was the father and that man's name appeared on the child's birth certificate.[5] While the LaBrec majority conceded that its decision would have been the same even if it were to "assume, as does the dissent, that the clock did not start ticking on [the biological father's] `opportunity interest' until [the date he discovered that he was the father,]"[6] the majority also made it clear that a biological father's actions before such date could also be considered. For example, the Court found that the biological father "offered no evidence to suggest he ever attempted to ascertain whether the unprotected intercourse in which he admittedly engaged with [the mother] had culminated in a pregnancy."[7]
The holding in LaBrec is consistent with Georgia law. OCGA § 19-8-12(a), while dealing specifically with adoption law, provides the following findings of the General Assembly:
. . .
(4) A biological father who is not the legal father may have an interest in his biological child. This inchoate interest is lost by failure to develop a familial bond with the child and acquires constitutional protection only if the biological father who is not the legal father develops a familial bond with the child;
(5) The subjective intent of a biological father who is not a legal father, whether expressed or otherwise, unsupported by evidence of acts manifesting such intent, shall not preclude a determination that the biological father who is not a legal father has failed to develop a familial bond with the child; and
(6) A man who has engaged in a nonmarital sexual relationship with a woman is deemed to be on notice that a pregnancy and adoption proceeding regarding a child may occur and has a duty to protect his own rights and interests in that child. He is therefore entitled to notice of an adoption proceeding only as provided in this Code section.
Based on these and other findings of the General Assembly, OCGA § 19-8-12 goes on to provide that if a biological father fails to register on the putative father registry, and other conditions exist such as that the man has failed to live with or support the child, the birth mother may surrender her rights and place the child up for adoption without even naming or giving notice to the biological *130 father.[8] Moreover, even when notice to the biological father is required, OCGA § 19-8-12(c) provides that notice may be given by publication where other forms of notification are not "feasible"; and OCGA § 19-8-12(f) provides that the rights of a biological father who is not the legal father "shall" be terminated if he fails to take certain action after the notice is published for three weeks. As a result, the statute permits a biological father's rights to be terminated even in cases in which he has no knowledge of his parentage.
While LaBrec refers to a biological father's interest as an "opportunity interest," whereas the General Assembly refers to it as an "inchoate interest" in OCGA § 19-8-12(a)(4), it is for the trial court to determine the status of such interest based on where Christian's actions place him under the Eason continuum. Here, the juvenile court determined that Christian had not abandoned his interest in V.B.L., but it refused to consider Christian's actions during the ten-year period before he learned that he was V.B.L.'s biological father. We therefore reverse the order of the juvenile court and remand this case for it to determine whether Christian has retained an interest in V.B.L. by considering his actions not only during the period since he learned of his parentage, but also since the time that he engaged in a nonmarital sexual relationship with Brandy in 1999.[9]
2. Given our holding in Division 1, we decline to address Smith's alternative claim that the trial court erred in finding that legitimation was appropriate based upon Christian's fitness as a parent without sufficiently considering what was in the best interest of V.B.L.[10]
Judgment reversed and case remanded.
MILLER, C.J., and PHIPPS, P.J., concur.
NOTES
[1] In the Interest of A.A., 293 Ga.App. 471, 476(4), 667 S.E.2d 641 (2008).
[2] (Citation and punctuation omitted.) In the Interest of M.K., 288 Ga.App. 71, 74(2), 653 S.E.2d 354 (2007).
[3] 257 Ga. 292, 294-295(1), 358 S.E.2d 459 (1987).
[4] 243 Ga.App. 307, 312-313(2), 534 S.E.2d 84 (2000). While LaBrec is physical precedent only (See Court of Appeals Rule 33(a)), it was affirmed by the Supreme Court of Georgia in Davis v. LaBrec, 274 Ga. 5, 549 S.E.2d 76 (2001).
[5] LaBrec, supra at 311(1), 534 S.E.2d 84.
[6] Id.
[7] Id. at 310(1), 534 S.E.2d 84.
[8] OCGA § 19-8-12(d)(3); 19-8-26(h)(1)(F).
[9] OCGA § 19-8-12(a)(6).
[10] See LaBrec, supra at 312-313(2), 534 S.E.2d 84.