710 S.E.2d 601 (2011)
309 Ga. App. 387
MORRIS
v.
MORRIS.
No. A11A0013.
Court of Appeals of Georgia.
April 21, 2011.
*602 Joshua David Earwood, Cartersville, for Appellant.
Ricky W. Morris Jr., McDonough, pro se.
MIKELL, Judge.
Cynthia Morris, the biological mother of W.W.M. and G.G.M., appeals from the trial court's order legitimating Ricky Weldon Morris, Jr., as the father of the children. The mother contends that the trial court erred in granting visitation rights to the father's sister, Julie Hutwagner, over the mother's objection, and that a provision linking the father's visitation of G.G.M. to his visitation with a child from his previous marriage was unenforceably vague. We agree. The mother also claims that the trial court erred in legitimating G.G.M., in allowing for immediate overnight visitation between G.G.M. and the father, and in failing to order that the father undergo alcohol treatment. The mother, however, fails to show that the trial court abused its discretion in so ruling. Accordingly, we affirm in part and vacate in part and remand with direction.
The record shows that the mother and the father, who never married, had two male children, W.W.M. and G.G.M. The mother filed a complaint for child support, and the father counterclaimed for legitimation. Following *603 an evidentiary hearing, the trial court found W.W.M. and G.G.M. to be the legitimate children of the father and granted joint custody to the mother and the father. The trial court also granted visitation rights to the father as to both children and, as to W.W.M., also granted visitation to Hutwagner, a nonparty.
1. The mother contends, and the father concedes, that the trial court erred in granting visitation rights to Hutwagner. The father testified that he wanted his sister to be available to help him with child visits but not to replace him on the visitations. In addition, the mother opposed having Hutwagner substitute for the father during visitation. She testified that she supported having the father's family involved with W.W.M. but that her goal was that "his dad has a bond with him." The trial court nevertheless awarded visitation to the father "and/or Julie Hutwagner" as to W.W.M.
As a rule, "[t]he right to determine whom the child shall visit and associate with, and when, where, and how often these visits and associations shall take place, is an inseparable and inalienable ingredient of the right of a parent to custody and control of a minor child."[1] Although grandparents may now sue for and obtain visitation rights[2] and certain third-party family members, including aunts, may seek custody of a minor child,[3] these statutes have no application to Hutwagner, who is neither a grandparent seeking visitation nor a family member seeking custody, but a nonparty to the action. Accordingly, we agree with the parties that the trial court's grant of visitation rights to Hutwagner was error. As Hutwagner's participation appears integral to the trial court's visitation scheme, that portion of the trial court's order providing for the visitation of W.W.M. is vacated in its entirety.
2. The mother claims that the father had virtually no involvement in G.G.M.'s life and thereby waived his "opportunity interest"[4] in developing a relationship with the child. Therefore, she contends, the trial court erred in legitimating G.G.M. We disagree.
Before granting a petition to legitimate, the court must initially determine whether the father has abandoned his opportunity interest to develop a relationship with the child. Then, depending on the nature of the putative father's relationship with the child and other surrounding circumstances, the standard for evaluating whether legitimation is appropriate is either a test of his fitness as a parent or the best interest of the child.[5]
A biological father's opportunity interest begins at conception and may endure through the minority of the child, but it may "be abandoned by the unwed father if not timely pursued. On the other hand it is an interest which an unwed father has a right to pursue through his commitment to becoming a father in a true relational sense as well as in a biological sense."[6] Factors which may support a finding of abandonment include, without limitation, a biological father's inaction during pregnancy and at birth,[7] a delay in *604 filing a legitimation petition,[8] and a lack of contact with the child.[9] "We review a trial court's ruling on a legitimation petition for abuse of discretion."[10]
The evidence in this case was developed over the course of three days of hearings during which the issues of legitimation, support, and visitation were explored at length. The mother agreed to the father's legitimation of W.W.M., who was almost four years old at the time of the hearing, but she opposed his attempt to legitimate then eight-month-old G.G.M., on the grounds that the father had not pursued a relationship with the child. As the mother points out, the father was actively involved in the life of W.W.M., a child who had been diagnosed as being "on the autistic spectrum." She contends that the father's contact with and financial support of G.G.M. have only been ancillary to his contact with and financial support of W.W.M. She refers to, among other things, the father's testimony that "[i]f you're asking me do I contribute on a daily basis like I do for [W.W.M.] for [G.G.M.], no, I don't."
In considering whether the father abandoned his opportunity interest in forming a relationship with G.G.M., the appropriate inquiry is not "whether the father could have done more,"[11] especially in comparison with the father's financial contributions to the child's older brother, W.W.M. As to what the father did in connection with G.G.M., beginning with conception, the evidence shows that although the father did not directly pay the bills associated with G.G.M.'s pregnancy, he provided medical insurance to the mother through his professional corporation so as to avoid out-of-pocket expenditures. He allowed the mother to live in his house during a portion of the pregnancy. The father attended at least one doctor's appointment during the pregnancy, and he visited the mother at the hospital the day after the birth.
Less than two months after the birth, the father amended his outstanding answer and counterclaim to the mother's petition for support to assert his claim to legitimate G.G.M. He also reimbursed the mother for some minor medical bills associated with G.G.M. The father had only two visits with G.G.M. at which the mother was not present, but the father testified that the mother was breast feeding the child and for that reason he could not take the child with him. According to the father, the mother did not allow him to be present at G.G.M.'s birth, she did not allow him to assist after the birth, and she did not allow him to participate in any activities with the child. In light of the foregoing, the evidence was sufficient to establish that the father pursued and did not abandon his interest in establishing and maintaining a relationship with G.G.M., and the mother cannot show that the trial court abused its discretion in failing to rule otherwise. The mother does not claim that the father is unfit, and the evidence was sufficient to establish that legitimation was in the child's best interest.[12] Accordingly, we find no error in the trial court's decision to legitimate the child.
3. The mother also complains that the ruling of the trial court setting visitation is contrary to the evidence. A trial court has broad discretion in fashioning visitation, "and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion."[13]
The trial court's order sets forth a visitation schedule for W.W.M. and a visitation schedule for G.G.M. Inasmuch as we have vacated that portion of the order providing *605 for visitation with W.W.M.,[14] the mother's arguments with respect to W.W.M. are moot. As to G.G.M., we conclude that the trial court's decision to allow immediate overnight visitation between G.G.M. and the father was not an abuse of discretion.
The mother also challenges paragraph 4(b) of the order. This provision contemplates visitation between the father and G.G.M. every other weekend, "the same weekends when [the father] has his son [A.F.M., from a previous marriage]." The mother contends the provision is vague and allows for modification of the father's visitation rights without her consent or that of the trial court. Pretermitting whether the provision contemplates self-executing changes in visitation,[15] the challenged provision contemplates visitation on alternate weekends, and it provides for visitation the same weekends when the father has A.F.M., but it is uncertain in its application if the father does not have A.F.M. on a particular alternating weekend or if the father and the previous wife decide to change A.F.M.'s visitation to every weekend or no weekends. Accordingly, we reluctantly conclude that the trial court abused its discretion in the terms of visitation contemplated by paragraph 4(b).[16]
Lastly, the mother contends the trial court erred in failing to order that the father undergo alcohol abuse treatment, presumably as a condition to visitation or the grant of joint custody. The trial court heard extensive evidence on this issue, and the mother fails to point to any instance in which the father's drinking endangered the children. Evidence also supports the father's contention that his drinking in the previous year did not rise to the level of alcohol abuse or dependency. We find no abuse of discretion.
In sum, we affirm the legitimation of G.G.M. We vacate that portion of the order providing for visitation of W.W.M. and, as to the visitation of G.G.M., we vacate paragraph 4(b). On remand, the trial court is directed to provide for visitation of the children not inconsistent with this opinion.
Judgment affirmed in part and vacated in part, and case remanded with direction.
SMITH, P.J., and DILLARD, J., concur.
NOTES
[1] Davis v. Davis, 212 Ga. 217, 220(3), 91 S.E.2d 487 (1956).
[2] See OCGA § 19-7-3(c) ("the court may grant any grandparent of the child reasonable visitation rights if the court finds the health or welfare of the child would be harmed unless such visitation is granted, and if the best interests of the child would be served by such visitation").
[3] OCGA § 19-7-1 (b.1). See Clark v. Wade, 273 Ga. 587, 544 S.E.2d 99 (2001) (interpreting best-interest-of-the-child standard for purposes of third-party custody statute).
[4] In re Baby Girl Eason, 257 Ga. 292, 296(1), 358 S.E.2d 459 (1987) (unwed fathers have an "opportunity interest" in developing a constitutionally protected relationship with their children).
[5] (Footnote omitted.) In the Interest of V.B.L., 306 Ga.App. 709, 710-711(1), 703 S.E.2d 127 (2010). See generally In the Interest of J.S., 302 Ga.App. 342, 344(1), 691 S.E.2d 250 (2010) ("If the [trial] court concludes that the father has abandoned his opportunity interest, that finding is sufficient to end the court's inquiry and justifies the denial of the legitimation petition") (citations, punctuation and footnote omitted).
[6] In re Baby Girl Eason, supra.
[7] See In the Interest of J.M., 289 Ga.App. 439, 444-445(1)(c), 657 S.E.2d 337 (2008); In the Interest of D.S.P., 233 Ga.App. 346, 348-349(2), 504 S.E.2d 211 (1998).
[8] See In the Interest of L.S.T., 286 Ga.App. 638, 639(1), 649 S.E.2d 841 (2007); In the Interest of J.L.E., 281 Ga.App. 805, 806-807, 637 S.E.2d 446 (2006).
[9] See id. at 807, 637 S.E.2d 446; Smith v. Soligon, 254 Ga.App. 172, 173-174(2), 561 S.E.2d 850 (2002).
[10] (Footnote omitted.) Binns v. Fairnot, 292 Ga. App. 336, 337, 665 S.E.2d 36 (2008).
[11] Id. at 338, 665 S.E.2d 36.
[12] See OCGA § 19-7-22(g); Carden v. Warren, 269 Ga.App. 275, 276-277(1)(a), 603 S.E.2d 769 (2004).
[13] (Citation and punctuation omitted.) Dupree v. Dupree, 287 Ga. 319, 323(7), 695 S.E.2d 628 (2010).
[14] See Division 1, supra.
[15] See Dellinger v. Dellinger, 278 Ga. 732, 735(1), 609 S.E.2d 331 (2004) (self-executing material changes in visitation are invalid absent evidence that change is in child's best interest).
[16] See, e.g., Hewlett v. Hewlett, 220 Ga. 656, 658(2)(c), 140 S.E.2d 898 (1965) (order's provision stricken as vague and indefinite).