## A11A1031. CALDWELL v. MEADOWS.

(717 SE2d 668)

ADAMS, Judge.

On March 4, 2010, William Robert Meadows filed a petition to legitimate his biological son, who was born out of wedlock to Jonell Caldwell on December 30, 2007. Following a hearing, the trial court granted Meadows's petition; awarded joint legal custody of the child to both parents, with physical custody in the mother; granted visitation to Meadows; and ordered Meadows to pay child support. Caldwell appeals.

1. Caldwell first asserts that the trial court applied an erroneous legal theory that excluded the issue of abandonment during pregnancy in considering the issue of legitimation and instead found that the only pertinent issues were whether the father supported his son and whether he had a meaningful relationship with the child. Caldwell argued below and argues on appeal that Meadows waived his opportunity interest in the child by offering her no emotional or financial support during her pregnancy.

Before granting a petition to legitimate, the court must initially determine whether the father has abandoned his

opportunity interest to develop a relationship with the child. Then, depending on the nature of the putative father's relationship with the child and other surrounding circumstances, the standard for evaluating whether legitimation is appropriate is either a test of his fitness as a parent or the best interest of the child.

(Footnote omitted.) *Morris v. Morris*, 309 Ga. App. 387, 388-389 (2) (710 SE2d 601) (2011). "In making this determination, the court must examine the benefits that might flow to the child if [ ]he were legitimated and to consider the legal consequences of the grant of the petition." (Citations and punctuation omitted.) *Adamavage v. Holloway*, 206 Ga. App. 156, 157-158 (1) (424 SE2d 837) (1992). Moreover, the trial court must consider that

[a] biological father's opportunity interest begins at conception and may endure through the minority of the child, but it may be abandoned by the unwed father if not timely pursued. On the other hand it is an interest which an unwed father has a right to pursue through his commitment to becoming a father in a true relational sense as well as in a biological sense. Factors which may support a finding of abandonment include, without limitation, a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and a lack of contact with the child.

(Punctuation and footnotes omitted.) *Morris*, 309 Ga. App. at 389 (2). This Court reviews a trial court's ruling on a legitimation petition for an abuse of discretion. Id.

Caldwell met Meadows in Florida when she became a student in his college psychology class in January 2007. They began a sexual relationship in March 2007, and Caldwell discovered that she was pregnant in early May 2007. The relationship ended in mid-2007, and Caldwell and Meadows had no contact from August 4, 2007 to November 30, 2007, when she e-mailed him to let him know she would be seeking child support. Caldwell testified that she had refrained from contacting Meadows during this almost four-month period at his request. Shortly thereafter, on December 4, 2007, Meadows went shopping with Caldwell and purchased a breast pump and some additional baby-related items. The parties met two additional times before their son was born on December 30, 2007. Meadows visited her at the hospital the night the child was born, although he did not attend the birth. Caldwell and the baby went to Meadows's apartment upon the child's release from the hospital and spent several days there before they moved to Georgia to live with her parents.

Meadows began making voluntary child support payments of $600 in January 2008 and continued those payments through December 2009, when he increased the payments to $800 per month in January 2010 at Caldwell's request. Meadows also made additional payments to assist with the child's medical expenses before he added him to his insurance policy in 2010, for which Meadows pays an additional $168 per month. The evidence at trial showed that even though Meadows lives in Florida and the child lives with his mother in Georgia, Meadows visited his son at least 22 times between his birth in December 2007 and February 18, 2010, when Caldwell's lawyer sent him a fax directing that he no longer contact or attempt to contact Caldwell. During this period, he attended his son's two birthday parties and provided him gifts on these occasions, as well as at Christmas and other holidays. Meadows filed his petition on March 4, 2010 after receiving the fax from Caldwell's attorney.

Based upon the evidence at trial, we cannot say that the trial court abused its discretion in determining that Meadows had not abandoned his opportunity interest to legitimate his son and that legitimation was in the child's best interest. In making this determination, the trial court did not exclude all evidence of Meadows's lack of involvement during Caldwell's pregnancy. Rather, the trial court acknowledged at trial that Meadows had provided her no financial support during her pregnancy beyond the purchase of a breast pump, and, significantly, the trial court's order expressly made its findings on the issue of abandonment based upon Meadows's actions "from conception through the date of the hearing."

Caldwell notes in the factual portion of her brief, however, that the trial court excluded evidence regarding Meadows's divorce, when Caldwell proffered it to show why Meadows denied her support during her pregnancy. Although the trial court excluded this evidence on the ground that it was not relevant to the issue of abandonment, the court stated that it might be relevant to the issue of legitimation and indicated that Caldwell would have the opportunity "to make all kinds of arguments about what's in the best interest of the child" on that issue. The trial court then allowed Caldwell's counsel to question Meadows about whether he provided her emotional support during her pregnancy and the importance of such support. And indeed Caldwell later testified about the role Meadows's pending divorce played in their lack of communication during her pregnancy and his desire to keep the pregnancy secret.

While a father's lack of involvement prior to a child's birth "is as significant as such a disregard after the child is born," *Turner v. Wright*, 217 Ga. App. 368, 369 (1) (457 SE2d 575) (1995), we are

aware of no authority limiting a trial court's inquiry into whether a father has abandoned his opportunity interest to the period before the child's birth especially where, as here, the father evinced such a clear intent to be involved in his child's life following his birth. Although Meadows was out of contact with Caldwell for a period of approximately four months during her pregnancy and did not provide her any financial or emotional support until shortly before the child was born, he developed and maintained a relationship with his son from his birth until Caldwell blocked his access to the child in February 2010. Meadows also supported the child financially from his birth and even after he was no longer allowed contact with him.

In considering whether Meadows abandoned his opportunity interest in forming a relationship with the child, the appropriate inquiry is not whether "the father could have done more," but rather whether the father "has done so little as to constitute abandonment." *Binns v. Fairnot*, 292 Ga. App. 336, 338 (665 SE2d 36) (2008). See also *Morris*, 309 Ga. App. at 390 (2). Compare *In the Interest of D. S. P.*, 233 Ga. App. 346, 349 (2) (504 SE2d 211) (1998) (affirming trial court's holding of abandonment where father made no attempt to contact or support child until two months after child's birth and mother had found adoptive home in the meantime). We find no merit to Caldwell's argument that the trial court applied an erroneous legal theory in making its decision on the issue of legitimation.

2. Caldwell next asserts that the trial court erred "by conducting the custody phase of the bench trial using an erroneous legal theory that limited evidence of the father's personal background to matters that only related to children, eliminating [her] right to inquire into 'any relevant factor,' " including the factors provided under OCGA § 19-9-3 (a) (3). She asserts that the fact that Meadows misrepresented his marital status as her college professor and "disingenuously teased" her with statements that they would soon be a family and kept her quiet by the payment of voluntary child support were factors for the trial court to consider in determining the best interests of the child. But Caldwell provides no record citations in the argument portion of her brief to support her contention that the trial court did not consider such evidence or otherwise limited such evidence. And in the factual portion of her brief, she provides record citations showing that the trial court, in fact, overruled Meadows's counsel's objections to her testimony that Meadows paid her child support because he did not want her "messing anything up with his divorce" and that he told her that they could be a family.

Caldwell's factual statement, however, does reference two instances in which the trial court sustained Meadows's counsel's objections to her attempts to introduce evidence of Meadows's

personal background and past relationships. In the first instance, Meadows's counsel objected on the ground of relevance to a question implying that Meadows dated another woman during his marriage. Caldwell's counsel indicated that the question was in response to evidence "of this guy hanging around children." The trial court then stated:

> [I]f you've got evidence that relates to him as it relates to children, I will be more than happy to entertain it, but I'm not interested in who he has dated at different times in his life, that is immaterial. The objection is sustained. Now, if you can show how that has got some bearing on children or something he's done in the presence of children or to children, then I want to hear that. But what his consensual relationships were with other adults, I don't find material to this issue.

In the second instance, the trial court sustained Meadows's objection to a question by Caldwell's counsel asking what he told her psychology class about his marital status. Caldwell's counsel argued that the evidence went to the issue of character. We will, therefore, confine our review to these two instances.

The duty of the judge in making a custody decision "shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly." OCGA § 19-9-3 (a) (2). Accordingly, "[w]here the trial judge exercises a sound legal discretion looking to the best interests of the child, this court will not interfere with his judgment unless it is shown that his discretion was abused." (Citations omitted.) *Sullivan v. Sullivan*, 241 Ga. 7, 8 (243 SE2d 35) (1978). And "where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion." (Citation omitted.) *Autrey v. Autrey*, 288 Ga. 283, 285 (4) (702 SE2d 878) (2010). Similarly, "[t]he admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Punctuation and footnote omitted.) *Mitcham v. Spry*, 300 Ga. App. 386, 388 (1) (685 SE2d 374) (2009).

Because the trial court was charged with determining what custody arrangement was in the child's best interest, we find no abuse of discretion in the court's decision to restrict the evidence to matters related to that issue. The trial court explained that it would consider evidence of Meadows's relationships if Caldwell demonstrated how such evidence related to his treatment of children.

Caldwell failed to make that connection at trial and similarly fails on appeal to show how such evidence related to the issue of custody. We find no error, therefore, in the trial court's exclusion of such evidence. See *Wilbanks v. Wilbanks*, 238 Ga. 660, 662 (3) (234 SE2d 915) (1977) (no abuse of discretion in failing to admit evidence of wife's adultery in divorce/child custody action).

The same analysis applies to the evidence of what Meadows may have told his psychology class in January 2007 about his marital status. Moreover, after the trial court sustained the objection to the testimony of what Meadows told his class, Caldwell testified that she "eventually" learned about his marriage, then "eventually" learned about his son, and "later on, much later on" she learned about his daughter. This evidence was sufficient to make Caldwell's point that Meadows may have been less than forthcoming with her about his marital status and personal life.

From our review of the record, the trial court's order and the parenting plan incorporated into that order, we find no abuse of discretion through the application of an erroneous legal standard; rather, the trial court properly exercised its discretion in concluding that the custody arrangement outlined in the parenting plan was in the child's best interest.

3. Caldwell next asserts that the trial court abused its discretion in using her former income in calculating child support as there was no evidence presented and no finding made by the trial court of wilful or voluntary unemployment authorizing the imputing of such income under OCGA § 19-6-15 (f) (4) (D).

In calculating the amount of child support Meadows was required to pay Caldwell, the trial court made the following finding:

> The Court finds that [Caldwell] was employed at a Barnes & Noble book store in Florida prior to the birth of her child and her income at the time she quit her employment there was $32,000 per year. [Caldwell] did not testify that she was terminated or otherwise involuntarily lost this employment and source of income. Therefore, the Court will impute income to [Caldwell] in the amount of $2666.67 per month.

The order later stated that the trial court was imputing that income "based on her ability to earn $32,000 per year." Based upon its calculations as to the party's relative financial situation, the trial court awarded Caldwell $850 per month in child support. Caldwell contends the trial court erred in imputing her former income because she testified that she had to move from Florida as the result of the birth of her child in order to depend upon family assistance, and there was no evidence that she could obtain an income of

$32,000 per year in Ben Hill County, Georgia, where she now resided.

The evidence showed that Caldwell was making $32,000 at Barnes & Noble and had health insurance available to her when she apparently made the decision to quit her Florida job and move to Georgia to live with her parents. The trial court was entitled under OCGA § 19-6-15 (f) (4) (D) to consider her past employment and her reasons for voluntarily terminating her employment and to assess the reasonableness of her decisions in deciding whether to impute income, without making specific findings on these matters:

> OCGA § 19-6-15 (f) (4) (D) does not require a trial court to make *written findings* as to why it decided to impute income to a spouse. It merely directs "the court or the jury (to) ascertain the reasons for the parent's occupational choices and assess the reasonableness of these choices in light of the parent's responsibility to support his or her child and whether such choices benefit the child."

*Bankston v. Lachman*, 286 Ga. 459, 461 (2) (689 SE2d 301) (2010). See also *Banciu v. Banciu*, 282 Ga. 616, 617-618 (1) (652 SE2d 552) (2007) (earning capacity may be considered in determining child support, including past income); *Larizza v. Larizza*, 286 Ga. 461, 462 (2) (689 SE2d 306) (2010).[1] We find no error.

4. Caldwell also asserts that the trial court violated OCGA § 19-7-25 by lifting the supersedeas imposed by her filing a motion for new trial and by ordering that she not deny Meadows custody and visitation in the interim. OCGA § 19-7-25 provides that "[o]nly the mother of a child born out of wedlock is entitled to custody of the child, unless the father legitimates the child as provided in Code Section 19-7-21.1 or 19-7-22. Otherwise, the mother may exercise all parental power over the child." She asserts that until Meadows's petition for legitimation is concluded, he had no rights to custody or visitation.

The trial court issued its final order on the petition for legitimation on November 24, 2010. Meadows's first visitation with his son under that order was scheduled for December 4 and 5, 2010. Caldwell apparently denied Meadows access to his son on those dates and filed a motion for new trial the next day on December 6, 2010. On December 9, 2010, upon Meadows's motion, the trial court lifted

---

[1] Moreover, Caldwell points us to no evidence demonstrating that she could not earn a similar income in her current location. Compare *Duncan v. Duncan*, 262 Ga. 872 (426 SE2d 857) (1993) (error to impute $32,000 income to husband where evidence showed that he was laid off from former employment and had been unsuccessful in his efforts to find similar employment).

the supersedeas arising from the filing of Caldwell's motion for new trial as it pertained to "parenting time, custody rights and visitation" awarded in its final order. Caldwell filed her application for discretionary appeal the same day. Under OCGA § 5-6-35 (h) and Court of Appeals Rule 40 (a), the filing of a discretionary appeal acts as a supersedeas to the extent that the filing of a notice of appeal acts as a supersedeas. On December 29, 2010, this Court granted Caldwell's application for discretionary appeal upon finding that she had a right to a direct appeal from the trial court's order as it involved the establishment of legal custody over her child. See *Daniels v. Barnes*, 289 Ga. App. 897, 899, n. 1 (658 SE2d 472) (2008); OCGA § 5-6-34 (a) (11). Caldwell filed her notice of direct appeal on January 4, 2011. Accordingly, assuming that Caldwell has paid all costs in the trial court, a supersedeas has been in place at least since that date. OCGA § 5-6-46 (a); Court of Appeals Rule 40 (a).

Given this procedural posture, we agree with Meadows that any issue surrounding the supersedeas imposed by the motion for new trial is moot.

5. The "Appellee's Motion to Impose a Penalty for Filing Frivolous Appeal" filed by Meadows is hereby denied.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED OCTOBER 14, 2011.

*Rainwater & Gibbs, David N. Rainwater*, for appellant.
*Jay, Sherrell, Smith & Braddy, John E. Smith II*, for appellee.