**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 19, 2025**

# In the Court of Appeals of Georgia

A25A1315. IN THE INTEREST OF A. G. Q., A CHILD.

GOBEIL, Judge.

This case involves the adoption of A. G. Q., a child born on December 19, 2022. On November 26, 2024, the Superior Court of Ben Hill County issued the instant final decree of adoption, terminating the parental rights of A. G. Q.'s biological mother, K. Q., and granting the adoption petition of the adoptive parents, J. S. and S. S. Despite terminating K. Q.'s parental rights, the superior court granted K. Q. "the right to visit the child" once a month in the final adoption decree. The adoptive parents have appealed, arguing that the superior court had no authority to order such visitation. We agree, and we thus vacate in part the final adoption decree.

Because the issue presented on appeal is purely a legal question, the standard of review is for "plain legal error" and we owe no deference to the trial court's ruling.

*Oxmoor Portfolio, LLC v. Flooring & Tile Superstore of Conyers, Inc.*, 320 Ga. App. 640, 641 (1) (740 SE2d 363) (2013).

The record in this case shows that A. G. Q. was born in Ocilla, Georgia. The adoptive parents, J. S. and S. S., had arranged with K. Q. in advance to adopt the child at birth. S. S. was in the delivery room with K. Q., and after the child was born, J. S. and S. S. received their own nesting room at the hospital and were the only people to care for the child as her parents. The day after the birth, K. Q. executed a voluntary surrender of parental rights. The Department of Family and Children Services (the "Department") met with J. S. and S. S. at the hospital and informed them the Department was involved due to a serious injury that to K. Q.'s other child. The hospital allowed the adoptive parents, who agreed to cooperate with the Department's investigation, to take A. G. Q. A few weeks later, J. S. and S. S. learned that the surrender document signed by K. Q. contained significant defects. They asked her to execute a corrected document, but she refused.

On February 12, 2024 (14 months after the child was born), J. S. and S. S. filed a Petition for Adoption pursuant to OCGA § 19-8-5, the third-party adoption statute. Their petition included the above-stated facts and explained that K. Q. had visited

with the child several times since her birth under J. S. and S. S.'s supervision. The biological father, M. P., was named in the petition. The petition sought to terminate the parental rights of both biological parents in connection with the adoption. K. Q. filed an objection to the adoption and a petition for writ of habeas corpus, seeking to have the child returned to her.

The trial court entered an order on August 9, 2024, terminating the biological father's parental rights pursuant to OCGA § 19-8-12 (f).[1] After significant investigation into the matter, and after conducting a hearing (of which there is no transcript), the trial court entered its final decree of adoption on November 26, 2024.

The decree added more facts that were not included in the adoption petition. According to the trial court, K. Q. went back and forth with the adoptive parents for months after the child's birth, saying both that she wanted the child back and that she wanted to cooperate with the adoption. K. Q. met with the child on a few occasions during that time with J. S. and S. S. present, but also backed out of other visitations or failed to show up. The child has never been left in K. Q.'s care, and K. Q. has not

---

[1] This statute allows the superior court to terminate the parental rights of a biological father who is not the legal father if he fails to act within 30 days of notice of the adoption proceedings.

provided any financial support for the child. Evidence was presented that K. Q. was a regular marijuana user, including in the presence of her other three-year old child, she had tested positive for marijuana in the past, and she tested positive for opioids during the course of the adoption proceedings. The court also found that J. S. and S. S. were well suited to adopt the child; they have steady employment, a large and supportive family and community, and have cared for the child since birth.

The court found that the original execution of the surrender document, although not functional as a valid surrender of parental rights due to errors, was nevertheless evidence that K. Q. intended to relinquish her parental responsibilities to the child. Additionally, the court found that K. Q. left the child in the care of the adoptive parents for more than six months without providing for the child's support, and that her actions during the pregnancy and delivery indicated a consistent desire for the child to be adopted by J. S. and S. S. (For instance, she allowed S. S. to attend a prenatal doctor's visit and be present during the birth, stated affirmatively the desire for adoption, introduced S. S. as the person who would be adopting the child, allowed the adoptive parents to name the child and take the child to a separate room in the hospital until the child was discharged into their care, signed the surrender, and failed

to rescind the surrender within the normal rescission period.) Since the time A. G. Q. was born, K. Q. continued to act with intent to relinquish her parental rights by stating she desired the adoption to proceed, and failed to follow up on any of her statements that she wanted the child back until after J. S. and S. S. filed their petition for adoption. The court found that K. Q. had abandoned the child, and it was in the child's best interest for the adoption to proceed,[2] thus terminating both biological parents' rights and granting the adoption petition.

The court then found that since the parties had "initially agreed that [K. Q.] would be permitted to visit with A. G. Q." that "[K. Q.] will have the right to visit with the child[.]" Accordingly, the court ordered that the K. Q. would be granted unsupervised visitation one day each month for four hours, beginning the next month. The adoptive parents moved for reconsideration, challenging — as relevant here —

---

[2] Though not contested on appeal, we note that the court considered the proper factors under OCGA § 19-8-10 (a) and OCGA § 15-11-310 (b) in its best interest of the child analysis. The court found that J. S. and S. S. were the only parents the child had known since birth, they had provided her with a stable and permanent home, they had robust family and community support to assist them in caring for the child, and taking the child away from that home and community would be detrimental to her well being. On the other hand, K. Q., who had spent only hours with the child since she was born, was not likely to be able to provide the child with a stable and permanent home due to substance abuse and mental health issues.

the granting of visitation to K. Q. The trial court denied the motion for reconsideration, and this appeal followed.

Notably, only J. S. and S. S. have appealed. K. Q. has not filed a brief in response, and did not appear at oral argument before this Court. There is no cross-appeal challenging the findings or conclusions underlying the trial court's termination of the parental rights of either biological parent, or the grant of the adoption petition. Thus, nothing in this opinion shall disturb the adoption of A. G. Q. by J. S. and S. S., and the court's order granting the adoption petition is affirmed in part. Rather, on appeal, J. S. and S. S. contest only the visitation portion of the trial court's order. Specifically, they argue that the trial court lacked the authority to grant visitation to K. Q. after her parental rights were terminated. We agree.

In this case, no party has come forward to dispute the trial court's findings that K. Q. abandoned A. G. Q. and that it was in the child's best interests to be adopted by J. S. and S. S., who are the only parents the child has ever known. Thus, there is no dispute that the trial court correctly granted their adoption petition. Accordingly, upon the grant of their adoption petition, J. S. and S. S. are A. G. Q.'s parents, as though they were her biological parents. OCGA § 19-8-19 (a) (2). This relationship

is permanent and no longer subject to judicial challenge. See OCGA § 19-8-18 (b) (1) (a decree of adoption grants "permanent custody of the child to each petitioner; and declar[es] the child to be the adopted child of each petitioner"); (h) (barring all judicial challenges to an adoption decree filed more than six months after the entry of the decree, other than fraud). See also *In re Stroh*, 240 Ga. App. 835, 840 (1) (b) (i) (523 SE2d 887) (1999) (noting the importance of meticulously following the adoption code so that the adoption will not later be subject to attack). As A. G. Q.'s parents, J. S. and S. S. have the right to parent their child without undue influence from the courts, which is considered a fundamental liberty interest protected by both the United States and Georgia Constitutions and "should be infringed upon only under the most compelling circumstances." *Wallace v. Chandler*, 360 Ga. App. 541, 542 (859 SE2d 100) (2021).

On the other hand, by virtue of the adoption decree, K. Q. is a legal stranger to A. G. Q. OCGA § 19-8-19 (a) (1). She thus has no legal rights to visit with A. G. Q. other than those granted elsewhere in the law. See *Morris v. Morris*, 309 Ga. App. 387, 388 (1) (710 SE2d 601) (2011) (explaining that only certain parties have the right to sue for visitation with a child, including specified family members under OCGA § 19-

7-3), disapproved of on other grounds by *Mathenia v. Brumbelow*, 308 Ga. 714 (3) (b) n. 14 (843 SE2d 582) (2020); *Mitchell v. Erdmier*, 253 Ga. 335, 335 (320 SE2d 163) (1984) (biological grandparent, whose child (the biological mother) surrendered her rights to a child being adopted, had no standing to pursue visitation after the adoption; biological grandmother was no longer a family member to the child after the adoption). "As a rule, the right to determine whom the child shall visit and associate with, and when, where, and how often these visits and associations shall take place, is an inseparable and inalienable ingredient of the right of a parent to custody and control of a minor child." *Morris*, 309 Ga. App. at 388 (1) (citation and punctuation omitted).

That said, there are statutes that authorize a trial court to grant visitation to specific people in connection with an adoption. But they do not apply here. For example, OCGA § 19-8-15 (c) allows certain family members with pre-existing visitation rights to the child being adopted to object to adoption, and in such cases, the trial court may "grant or continue" those pre-existing visitation rights after the adoption. However, this provision applies only to adoption petitions filed by a blood relative of the child, which the instant petition was not. OCGA § 19-8-15 (c). Further, the court has the authority to "continue or discontinue" visitation rights to former

family members in an adoption order, if there is an existing visitation order in place. OCGA § 19-8-18 (b) (4). However, this provision requires the pre-existing visitation order to have been issued pursuant to OCGA § 19-7-3, which applies only to grandparents and siblings of a child, and hence does not apply to the instant case.[3]

Although the trial court cites no authority for its visitation order in this case, it does reference an initial agreement by J. S. and S. S. that K. Q. would be allowed to visit the child — leading us to assume that the trial court intended to act pursuant to OCGA § 19-8-27 (b). Under this statute, the court may enforce a post-adoption contact agreement that the parties voluntarily entered into, but to be enforceable, such

---

[3] Furthermore, in granting this type of visitation (or any visitation to a non-parent), the person to whom visitation was granted would have to affirmatively seek it, and the court would be required to exercise its discretion to weigh the benefit to the child versus the harm caused to the parents, neither of which occurred in this case. See OCGA § 19-8-15 (c) (giving a family member with pre-existing visitation rights the privilege to object to an adoption to maintain those rights; requiring the court to use its discretion to consider those objections and act accordingly); OCGA § 19-8-18 (b) (4) (allowing the court to continue a pre-existing visitation order as it deems is in the best interest of the child); OCGA § 19-7-3 (requiring family member desiring visitation to file an action or intervene in an existing action). Indeed, even in cases where a non-parent has a clear legal right to seek visitation, courts should order such visitation against the wishes of a parent only "if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." *Pate v. Sadlock*, 345 Ga. App. 591, 595 (1) (b) (ii) (814 SE2d 760) (2018) (citation and punctuation omitted).

an agreement "shall be in writing and signed by all of the parties to such agreement acknowledging their consent to its terms and conditions" and include specific warnings concerning the finality of the adoption decree. OCGA § 19-8-27 (b) (3), (c). Here, although there is evidence that there was some contemplation of a post-adoption contact agreement, no written agreement was cited by the trial court, nor appears in the record. Given that "[a]doption statutes should be strictly construed and meticulously followed," this provision did not authorize the trial court to order visitation without an agreement in writing that conforms with the statute. *Johnson v. Smith*, 251 Ga. 1, 2 (2) (302 SE2d 542) (1983) (citation and punctuation omitted).

Accordingly, without specific authority to justify the significant intrusion into J. S. and S. S.'s parental rights to care for their child, we find that the trial court was not authorized to grant visitation to K. Q. We thus vacate in part the trial court's adoption decree, leaving in place all findings relevant to the grant of the adoption petition, and vacating only the portion of the order granting visitation to K. Q.

*Judgment affirmed in part and vacated in part. Rickman, P. J., and Davis, J., concur.*