**FOURTH DIVISION
DOYLE, P. J.,
ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A1005. DODSON v. WALRAVEN.                                    DO-046

DOYLE, Presiding Judge.

Following a bench trial, Douglas Dodson appeals from an order establishing custody of his minor child and his child support obligations to Sarah Walraven, the mother of the child. Dodson contends that the trial court erred by (1) attributing to his monthly income $3,000 to reflect support he received from his parents while he lived with them; (2) awarding back child support of $9,550; and (3) awarding Walraven $5,000 in attorney fees under OCGA § 9-15-14 (b). For the reasons that follow, we affirm in part, reverse in part, and remand.

The record shows that Dodson and Walraven dated for a period of time and conceived a child born out of wedlock in October 2007. By August 2008, the couple was no longer together, and Dodson filed a verified petition in the superior court

alleging himself to be the father and seeking a determination of paternity, legitimation, custody, and visitation. Walraven answered, opposing the petition, and filed counterclaims to establish paternity and child support in the event of legitimation. Discovery and paternity testing ensued (confirming Dodson's paternity), and a bench trial began on the merits of Dodson's petition. Because the trial had to be continued for scheduling reasons, in February 2010, the trial court entered a temporary order establishing Dodson's visitation, which was supervised by Dodson's parents initially and unsupervised thereafter. The temporary order also established child support payments from Dodson to Walraven in the sum of $831 per month.[1]

The bench trial concluded in July 2010, and the superior court entered an order adjudicating paternity, establishing joint custody, and setting Dodson's child support obligation at $850 per month. It also ordered Dodson to pay Walraven $9,550 in unpaid child support for the period between the time Dodson filed his petition and the entry of the February 2010 temporary order. Dodson moved for a new trial, which

---

[1] The temporary order was submitted by consent of both parties and prepared by Dodson's attorney, with adjustments made by the trial court.

motion was denied in an order also awarding certain attorney fees to Walraven. Dodson now appeals.[2]

1. Dodson contends that the trial court erred by calculating his child support obligation based on $3,000 in monthly gift income that was added to his stipulated imputed income of $2,915. The additional $3,000 in monthly income was characterized by the trial court as gift income to reflect the benefits Dodson received while unemployed and living with his parents. Because the record lacks any evidence supporting the trial court's finding as to Dodson's income, we reverse.

> In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. Furthermore, since the clearly erroneous test is the same as the any evidence rule, we will not disturb factfindings of the trial court if there is any evidence to sustain them.[3]

---

[2] The trial court's order denying his motion for new trial partially modified the original order, but it did not materially alter Dodson's obligations other than to add the attorney fee award.

[3] (Punctuation and citations omitted.) *Patel v. Patel*, 285 Ga. 391, 391-392 (1) (a) (677 SE2d 114) (2009).

Here, the trial court's award was premised on its finding as to Dodson's income under the child support guidelines found in OCGA § 19-6-15, which provides as follows, in relevant part:

Gross income of each parent shall be determined in the process of setting the presumptive amount of child support and shall include all income from any source, before deductions for taxes and other deductions such as preexisting orders for child support and credits for other qualified children, whether earned or unearned, and includes, but is not limited to, the following: . . . Gifts that consist of cash or other liquid instruments, or which can be converted to cash.[4]

At trial, Dodson and Walraven, who were both unemployed, each stipulated to an amount of income that should be imputed to them in lieu of income from employment. The trial court heard further testimony from both Dodson and Walraven about the benefits they received while living with their parents. These benefits included living expenses and occasional payment of attorney fees. For Dodson's part, the testimony showing his living expenses included a gift of his mother's Cadillac Escalade sport utility vehicle and payment of related expenses for fuel and insurance, payment of certain installments of Dodson's child support obligation, rent payments

---

[4] OCGA § 19-6-15 (f) (1) (A) (xvii).

4

and other expenses while Dodson temporarily lived away from home, occasional cash payments, meals, and rent-free housing in his parents' home. While it is undisputed that the payments made to Dodson or on his behalf were in cash or a cash equivalent,[5] there was no testimony or other evidence showing the actual amount of ongoing payments made to or on behalf of Dodson for his living expenses which would support a finding of continuing, regular monthly gift income of $3,000 to Dodson.[6] Without some evidence of the amount of regular, ongoing gift income to Dodson, attributing to him a monthly lump-sum gift income of $3,000 was not supported by the record.[7] Accordingly, the trial court erred by including that income in its child support calculations for Dodson.

---

[5] It was estimated that Dodson's parents paid $50,000 in total attorney fees on Dodson's behalf, but these payments do not represent *ongoing* monthly gifts. These nonrecurring payments are attributable as variable income, and they are discussed in Division 2.

[6] The trial court expressly stated that it did not consider deposition testimony in light of the witnesses' appearance in court.

[7] The trial court attributed *no gift income* to Walraven despite testimoney that she received similar living assistance from her parents while she lived with them.

2. Dodson also contends that the trial court erred by awarding back child support of $9,550. We conclude that Walraven is entitled to back support, but the record does not support the amount awarded, so we remand.

Dodson relies on *Smith v. Carter*,[8] which addressed a lump-sum $70,224 back payment award to the higher-income mother for the first 12 years of the child's life.[9] During that time, the father made a single child support payment of $100, remarried, and adopted five children.[10] Under those facts, this Court ruled that the trial court erred by failing to consider the mother's higher income when it calculated the father's historical child support obligation to be nearly the entire amount of the basic child support figure, thereby ignoring the statutory requirement to calculate the father's pro rata share under OCGA § 19-6-15 (b) (5).[11]

---

[8] 305 Ga. App. 479 (699 SE2d 796) (2010).

[9] See id.

[10] See id. at 479-480.

[11] See id. at 482. See also *Hamlin v. Ramey*, 291 Ga. App. 222, 223 (1) (661 SE2d 593) (2008) ("instead of calculating child support based on the non-custodial parent's income, the new 'income shares' model is designed to have the child support divided between the parties on a pro rata basis") (punctuation omitted).

Dodson focuses on dicta in the case stating that "the custodial parent can never be awarded back support for more than he or she actually spent."[12] But Dodson ignores the context of this quote, which merely was clarifying that the custodial parent's actual expenditures are the maximum and not the minimum for a child support award.[13] Thus, the *Smith* case did not establish a new prima facie burden of proof on the custodial parent. Here, the evidence showed that during the time Dodson did not make child support payments, Walraven bore the expenses of raising their son. This supports an award of support for that time.

Nevertheless, in light of our ruling in Division 1, the *amount* awarded by the trial court is not consistent with the child support obligation authorized by the evidence. The trial court awarded $9,550 to account for 17 months of Dodson's non-payment during the litigation, which amounts to $561.76 per month. But after discounting Dodson's income by the erroneous $3,000 of monthly gift income, his obligation should be based on his monthly imputed income of $2,915 based on his earning capacity. Thus Dodson's and Walraven's combined monthly income would be $5,778 (based on Walraven's imputed income of $2,863), and the basic child

---

[12] *Smith*, 305 Ga. App. at 482.

[13] See id.

support obligation would be $971 per month.[14] Dodson's pro rata share of this would be $489.87 per month, which is lower than the monthly rate of back support awarded by the trial court.

But as noted in Division 1, there was evidence that Dodson's parents paid $50,000 in his attorney fees associated with this litigation. With respect to such variable income, OCGA § 19-6-15 (f) (1) (D) provides as follows:

> When income is received on an irregular, nonrecurring, or one-time basis, the court . . . may, but is not required to, average or prorate the income over a reasonable specified period of time or require the parent to pay as a one-time support amount a percentage of his or her nonrecurring income, taking into consideration the percentage of recurring income of that parent.

In light of the attorney fee payments made by Dodson's parents on his behalf during the litigation, this language authorizes a temporary enhancement of Dodson's income, commensurate with the attorney fees paid on Dodson's behalf during the 17-month disputed period. Accordingly, we uphold the ruling that Walraven is entitled to an award of back child support, but remand for recalculation of the amount consistent with this opinion.

---

[14] See OCGA § 19-6-15 (o).

3. Finally, Dodson challenges the trial court's award of attorney fees to Walraven. Walraven sought attorney fees pursuant to OCGA §§ 9-15-14 (abusive litigation) and 19-7-50 (general cost award in paternity cases), claiming that Dodson responded late to discovery, did not pay child support, and failed to file a financial affidavit. The trial court awarded $5,000 in fees pursuant to OCGA § 9-15-14 (b) based on its finding that Dodson unnecessarily expanded the proceedings and took a position that lacked substantial justification when he failed to make child support payments after the paternity test identified him as the biological father and before the court ordered him to pay support in the February 2010 temporary consent order. The trial court denied the remaining fees requested by Walraven.

This litigation began when Dodson filed his petition to legitimate his child, and under OCGA § 19-7-22 (e), when a legitimation petition is filed the amount of child support is one of the issues to be determined, along with custody and visitation.[15] In response, Walraven opposed the petition to legitimate and her counterclaim sought support only in the event that "the Petitioner [was] determined to be the biological father." After paternity was factually (not judicially) determined by DNA testing, Walraven never moved for a temporary order of support under OCGA § 19-7-46.2

_____

[15] See OCGA § 19-7-22 (f.1).

9

nor was she compelled to engage in any substantial extra litigation aside from the normal course of resolving the issues raised in the legitimation petition.[16] A review of the record and trial transcripts reveals little if any extra time spent at the trial on the issue of enforcing Dodson's support obligation,[17] and the record contains no other expansion of the legitimation proceedings. Accordingly, in the absence of evidence to support the trial court's findings, the court abused its discretion by awarding attorney fees to Walraven under OCGA § 9-15-14 (b) on this basis.[18]

*Judgment affirmed in part, reversed in part, and case remanded. Andrews and Boggs, JJ., concur.*

---

[16] The temporary order in this case arose because the bench trial could not be completed in the time scheduled, and it had to be continued until the next available date, which was months later.

[17] The record contains a single letter dated October 15, 2009, from Walraven's attorney in which she references the parties' extensive visitation discussions and in the same letter addresses the issue of support and requests that Dodson support his child. At the beginning of the first day of trial, the trial court noted that the attorneys were "talking about a stipulation on the support issue," such that Walraven's income was essentially agreed to, and there was "still a little bit of question about" Dodson's income.

[18] See *Franklin Credit Mgmt. Corp. v. Fridenberg*, 275 Ga. App. 236, 242 (2) (d) (668 SE2d 727) (2008) (fee award must be limited to those fees incurred because of the sanctionable conduct).