**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 29, 2014**

# In the Court of Appeals of Georgia

A14A0591. WILBOURN v. LUMPKIN.

PHIPPS, Chief Judge.

Phillip Wade Wilbourn appeals from the trial court's denial of his motion to legitimate his biological son. Wilbourn contends that because he developed his opportunity interest in a relationship with the child, the trial court's ruling was in error. Because, among other reasons set forth below, Wilbourn waited more than four years after the child's birth to seek a relationship with the child, to provide or offer support for the child, and to file a petition to legitimate the child, we disagree and affirm.

The record shows that Wilbourn and Lumpkin are the biological parents of the child. When the child was born in 2008, Wilbourn was married to another woman, with whom he had a daughter. Lumpkin married another man in 2011. She contacted

Wilbourn in May 2012 and asked him to sign a release of his parental rights so that her husband, the child's stepfather, could adopt the child. Wilbourn, who had been aware of the mother's pregnancy and of the birth of the child approximately four years earlier, asked for a DNA test, which subsequently confirmed that Wilbourn was the child's father. Wilbourn declined to sign the release and informed Lumpkin that he wanted to start a relationship with the child.

Lumpkin agreed that Wilbourn could meet with his son. In July 2012, on or around the child's fourth birthday, Wilbourn, Lumpkin, and the child met at an elementary school park for approximately thirty or forty-five minutes. According to Lumpkin, the visit "went well." In early September 2012, Wilbourn was present at another meeting where the child was introduced to Wilbourn's daughter, the child's half-sister. Wilbourn's daughter and the child also attended the same school. The following Monday, and during the remainder of the month, Lumpkin waited on Wilbourn's wife and daughter to arrive at school because the child wanted to walk into school with his sister.

Also in September 2012, Wilbourn sent two checks to Lumpkin in the amount of $100 each, which she cashed. Wilbourn filed his petition to legitimate the child in October 2012. Wilbourn thereafter mailed, but Lumpkin refused to accept, additional

2

child support payments. No further meetings occurred between Wilbourn and the child. The stepfather later filed a petition to adopt the child. A joint evidentiary hearing was then held on the adoption petition and Wilbourn's petition to legitimate the child.

The trial court, upon finding that Wilbourn had been afforded an opportunity to develop a relationship with the child, but was inactive during pregnancy and birth, lacked contact with the child, and waited years to pursue legitimation, denied Wilbourn's petition. Following our grant of his application for discretionary appeal, Wilbourn contends that the trial court erred in denying his petition to legitimate the child and in denying his motion for a new trial because he had developed his opportunity interest with the child. He also argues that the trial court erred in failing to take into consideration that Lumpkin encouraged and allowed a relationship between Wilbourn and the child, but refused to accept child support payments and further contact with the child once Wilbourn filed the legitimation petition.

In considering a petition to legitimate, the trial court must first determine whether the father abandoned his opportunity interest to develop a relationship with the child.[1] In that respect,

---

[1] *Morris v. Morris*, 309 Ga. App. 387, 388-389 (2) (710 SE2d 601) (2011).

3

a biological father is afforded an opportunity to develop a relationship with his offspring. If the father grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. Unwed fathers gain from their biological connection with a child an opportunity interest to develop a relationship with their children which is constitutionally protected. This opportunity interest begins at conception and endures probably throughout the minority of the child. But it is not indestructible. It may be lost. It is an interest which can be abandoned by the unwed father if not timely pursued.[2]

"We review a trial court's ruling on a legitimation petition for abuse of discretion."[3]

Factors supporting a finding of abandonment of a father's opportunity interest "include, without limitation, a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and a lack of contact with the child."[4] The trial court found, and the evidence shows, that all of these factors were present

---

[2] *Neill v. Brannon*, 320 Ga. App. 820, 821 (1) (738 SE2d 724) (2013) (citation and punctuation omitted).

[3] *Binns v. Fairnot*, 292 Ga. App. 336, 337 (665 SE2d 36) (2008) (footnote omitted).

[4] *Morris*, 309 Ga. App. at 389 (2) (punctuation and footnotes omitted). Accord *Caldwell v. Meadows*, 312 Ga. App. 70, 71 (1) (717 SE2d 668) (2011).

4

here and that, in effect, Wilbourn had abandoned his opportunity interest to develop a relationship with the child.[5] Wilbourn knew about Lumpkin's pregnancy, but he did not provide or offer her any assistance with medical costs for the birth of the child, or pay any subsequent costs associated with the care of the child until after the child's fourth birthday. Following the child's birth, Wilbourn maintained telephone contact with Lumpkin and even inquired about the child, but according to Lumpkin, Wilbourn "never initiated or wanted to initiate a meeting" with the child. Lumpkin further testified that she did not prevent Wilbourn from having contact with the child, but "left the choice to" Wilbourn. Wilbourn acknowledged that before Lumpkin asked him to sign a parental release he made no effort to be part of the child's life.[6] Rather, he waited over four years before seeking to legitimate his son. Given the

[5] Although the trial court did not use the word "abandon," given its express reliance on the factors associated with abandonment of a father's opportunity interest, and its "rigorous inquiry into that subject," the trial court's failure to use specific terminology is not critical. See *Smith v. Soligon*, 254 Ga. App. 172, 174 (2) n.1 (561 SE2d 850) (2002).

[6] Wilbourn also testified that after the child was born he was "not sober" and that he and Lumpkin agreed that it would not be beneficial for Wilbourn to become part of the child's life, although "[w]e both left the door open for when he's ready, I'm ready. We'll form a relationship." On cross-examination, Wilbourn agreed that he had been sober since February of 2010, but made no effort to establish a relationship with the child until May of 2012.

evidence, the trial court's denial of the legitimation petition is supported by ample

authority.[7]

---

[7] See *Neill*, 320 Ga. App. at 824-825 (1) (the evidence established that the biological father abandoned his opportunity interest to form a relationship with his daughter when he waited more than four years after learning that the child was his biological daughter before deciding he would like to have a parent-child relationship); *Matthews v. Dukes*, 314 Ga. App. 782, 786 (1) (726 SE2d 95) (2012) (where child was conceived in an extramarital affair between the biological father and the child's mother, and the biological father waited five years before filing a legitimation petition, the evidence supported the trial court's conclusion that the biological father had abandoned his opportunity interest), overruled on other grounds, *Brine v. Shipp*, 291 Ga. 376, 380 (3) (729 SE2d 393) (2012); *In the Interest of J. S.*, 302 Ga. App. 342, 344 (1) (691 SE2d 250) (2010) (where the biological father had lived with and supported his child and the child's mother for the first year after the child was born, but had no significant contact with the child and failed to pay child support for the next four years while he was incarcerated, the evidence supported the juvenile court's finding that the biological father had abandoned his opportunity interest); *Smith*, 254 Ga. App. at 173-174 (2) (affirming finding that the biological father had abandoned his opportunity interest where the father lived with the child and the child's mother until the child was four years old but had failed to provide any significant emotional or monetary support for the child, and for the next two years had only a few contacts with the child and did not provide any child support, but waited to file a legitimation petition until after the mother married and her husband filed an adoption petition); *In the Interest of D. S. P.*, 233 Ga. App. 346, 346-349 (2) (504 SE2d 211) (1998) (where biological father did nothing to protect his parental interests until the adoption agency filed a petition for termination of his parental rights, but "chose to disregard his opportunity to assume responsibility for the child during the pregnancy and for a time after the birth of the child," the evidence supported the trial court's finding that the father had abandoned his opportunity interest). Compare *Caldwell*, 312 Ga. App. at 71-73 (where biological father developed and maintained a relationship with his son until the mother blocked access to the child, trial court did not abuse its discretion in determining the father had not abandoned his opportunity interest to legitimate his child).

Wilbourn argues that he nevertheless "should get a second chance" given that, once the DNA test confirmed paternity, he took steps to establish a relationship with the child with Lumpkin's encouragement. However, Wilbourn was not required to wait for the scientific certainty afforded by a DNA test to pursue a legitimation petition.[8] Nor can we say that one visit between Wilbourn and the child, and his attendance at the meeting between the child and his half-sister, along with $200 in child support, following four years of Wilbourn's knowing failure to pursue any contact with the child, precluded the trial court's finding of abandonment.[9] Nor does Wilbourn show any authority for the proposition that Lumpkin's failure to accept additional child support payments or allow visitation after Wilbourn filed the legitimation petition would require the trial court to ignore the years of inactivity

[8] See *Neill*, 320 Ga. App. at 825 (1) (biological father was aware during the pregnancy that he could be the father of the child, and he could have filed a legitimation petition after the child's birth and sought court-ordered genetic testing); *In the Interest of J. L. E.*, 281 Ga. App. 805, 806 (637 SE2d 446) (2006) (noting that obtaining the results of genetic testing is not a prerequisite to filing a legitimation petition).

[9] Compare *Binns*, 292 Ga. App. at 338 (concluding that, even if the biological father could have done more, the father's constant payment of child support, coupled with his avowed interest in establishing and maintaining a relationship with the child, was nevertheless not so little as to constitute abandonment of his opportunity interest).

preceding the filing of the petition.[10] Accordingly, we find that the trial court did not abuse its discretion in denying Wilbourn's petition to legitimate the child.

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[10] See generally *Neill*, 320 Ga. App. at 824-825 (1) (noting that by the time the biological father sent cards and letters to his child, the mother had already challenged his petition to legitimate the child).