**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2018**

# In the Court of Appeals of Georgia

A18A0563. CHALK v. POLETTO.

REESE, Judge.

Herschel E. Chalk, III, filed a petition to legitimate his two biological sons. Their mother, Ketty Poletto, opposed the petition, and the Superior Court of Cobb County held a bench trial on February 7, 2017. After Chalk rested his case, the court granted Poletto's motion for a directed verdict, and issued a written order denying the legitimation petition. The court subsequently entered an order denying Chalk's motion for new trial and granting Poletto's petition for attorney fees, litigation costs, and guardian ad litem fees. Chalk appeals from this order. For the reasons set forth, infra, we affirm.

The record is undisputed that Chalk is the biological father of two minor children born to Poletto in 2011 and 2012. Chalk and Poletto lived together with the

children until October 2015, when Poletto evicted Chalk from her apartment. In November 2015, Poletto obtained a six-month family violence protective order prohibiting Chalk from contacting her or the children.[1] Chalk consented to the protective order, but immediately filed a petition to legitimate the children.

In the legitimation action, the trial court appointed a guardian ad litem for the children and required Chalk and Poletto to split the cost of the guardian ad litem's services. When Chalk failed to pay his portion, the guardian ad litem petitioned for a citation of contempt against him, and the trial court scheduled a hearing on the matter. Chalk, who was an Army reservist, asked for a continuance and provided the guardian ad litem with a copy of military orders purporting to send him to training on the date of the hearing. On the day of the scheduled contempt hearing, Chalk instead attended a marketing conference out-of-state. After holding the hearing in Chalk's absence, the trial court held Chalk in contempt for failing to pay the guardian ad litem, failing to cooperate with her investigation, and delaying the completion of the legitimation action.

---

[1] Just before the protective order expired in May 2016, Poletto obtained a 12-month protective order with the same prohibitions.

At the subsequent bench trial on Chalk's petition to legitimate in February 2017, Chalk testified that he had financially supported the children while he lived with Poletto and enjoyed a close relationship with them. On cross-examination, however, Chalk was unable to say how much support he had provided, had no documentation of any such support, and conceded that Poletto had paid for rent and childcare while they lived together. He also admitted that, after Poletto evicted him, he provided no support for the children. Chalk testified that he had received a bachelor's degree from Georgetown University, but admitted that he had not held remunerative employment since he quit his job in 2012,[2] and that he owed over $200,000 in debt, primarily in student loans. Further, Chalk admitted that, in 2002, he had pled guilty in Virginia to the felony of making false statements to receive benefits, and he was still paying off the fine associated with his sentence for that charge when he filed the legitimation action.

At trial, Chalk claimed to have zero assets. But, in 2016, he had taken a six-week trip to South America that included attending the Olympic Games in Brazil,

---

[2] Chalk testified that he solicited contributions from members of his church to go on "mission trips" abroad. The evidence also showed that he had a significant internet and social media presence, where he advertised himself as a "social entrepreneur" and branding consultant.

hiking in Machu Picchu, and riding the "Swing of Death" and taking a dune buggy tour in Ecuador. He had also traveled to Thailand, Costa Rica, Las Vegas, Orlando, and Opryland. The exhibits introduced on cross-examination showed that Chalk had documented these travels on social media. In addition, in 2016, Chalk had paid for indoor skydiving, laser hair removal, college classes, and renewal of his private pilot's license.

In granting Poletto's motion for directed verdict, the court ruled that Chalk had abandoned his opportunity interest to establish a relationship with his children and that legitimation was not in the children's best interests. The court stated: "If this man says today was Tuesday, I would look at my calendar. He's lucky he's not jailed now for perjury. He's a liar." The court then issued a written order denying the legitimation petition. Chalk filed a motion for new trial. After a hearing, the trial court entered an order denying that motion and awarding $30,034.95[3] to Poletto under OCGA § 19-9-3 (g).

---

[3] This number represents $25,680.27 in Poletto's attorney fees, Poletto's half of the guardian ad litem fees of $3,190.46, and costs totaling $1,164.22.

We review a trial court's decision whether to award attorney fees for an abuse of discretion.[4] Similarly, "[w]e review a trial court's ruling on a legitimation petition for an abuse of discretion and will sustain the trial court's factual findings if there is any evidence to support them."[5] "In a bench trial, where there is no verdict by a jury, a motion for directed verdict is treated as a request for involuntary dismissal under OCGA § 9-11-41 (b)."[6]

> A dismissal under O.C.G.A. § 9-11-41 (b) does not require the trial court to construe the evidence most favorably for the non-moving plaintiff. Since the trial court determines the facts as well as the law, it necessarily follows that an involuntary dismissal may be warranted even though plaintiff may have established a prima facie case. Thus, despite the rule that a motion for a directed verdict in a bench trial is construed to be a motion for involuntary dismissal, we cannot treat a dismissal pursuant to OCGA § 9-11-41 (b) the same as a directed verdict in a jury trial, which may be upheld only if the evidence demands a particular verdict. At a bench trial, the trial court can determine when essential facts have

---

[4] *Odum v. Russell*, 342 Ga. App. 390, 393 (2) (802 SE2d 829) (2017).

[5] *Durden v. Anderson*, 338 Ga. App. 565 (1) (790 SE2d 818) (2016) (citation omitted).

[6] *Magnus Homes v. Derosa*, 248 Ga. App. 31 (1), n. 2 (545 SE2d 166) (2001) (citation omitted).

5

not been proved. The trial court's determination as a trier of fact will be reversed only where the evidence demands a contrary finding.[7]

With these guiding principles in mind, we turn to Chalk's claims of error.

1. Chalk argues that the trial court clearly erred when it denied his legitimation petition because his testimony was clear and undisputed on many areas of his parental involvement over a nearly five-year period, and this involvement ended only when Poletto ejected him from the home. Chalk contends he did not abandon his opportunity interest but filed to legitimate the children as soon as Poletto sought to exclude him from their lives.

> In considering a petition to legitimate, the trial court must first determine whether the father abandoned his opportunity interest to develop a relationship with the child. In that respect, a biological father is afforded an opportunity to develop a relationship with his offspring. If the father grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. Unwed fathers gain from their biological connection with a child an opportunity interest to develop a relationship with their children which is constitutionally protected. This opportunity interest begins at conception and endures probably throughout the

---

[7] *Smith v. Ga. Kaolin Co.*, 269 Ga. 475, 476 (1) (498 SE2d 266) (1998) (citations and punctuation omitted).

6

minority of the child. But it is not indestructible. It may be lost. It is an interest which can be abandoned by the unwed father if not timely pursued.[8]

As Chalk points out, no other witnesses testified at trial. However, the court admitted multiple exhibits during Chalk's cross-examination that demonstrated his extensive travel, including his "six-week journey throughout Latin America," all while reporting very little annual income from wages, and negative net self-employment income. As noted above, Chalk did not introduce any documentation to support his claims that he had ever provided financial support for the children.

Giving due regard to the opportunity of the trial court to judge the credibility of the sole witness,[9] particularly given Chalk's prior felony conviction for making false statements and his attempt to perpetrate a fraud upon the court in this case,[10] the

---

[8] *Wilbourn v. Lumpkin*, 327 Ga. App. 385, 386 (759 SE2d 262) (2014) (punctuation and footnotes omitted).

[9] See *Magdangal v. Hendrix*, 313 Ga. App. 522 (722 SE2d 130) (2012).

[10] The guardian ad litem had called Chalk's commanding officer to verify the military training orders and learned they had been falsified. Chalk later admitted under oath that he had forged them.

trial court was not required to believe his testimony, including his assertions that he had a close relationship with the children and had supported them financially.[11]

Moreover, there was evidence that undermined or contradicted Chalk's testimony. Chalk did not attempt to legitimate the children until after Poletto evicted him from her apartment in October 2015, when the children were approximately two and four years old. Chalk then consented to a protective order that prevented him from having any contact with the children. Additionally, there was no documentary evidence that Chalk ever financially supported the children, either while he was living with Poletto or after she evicted him, even though he spent significant sums of money on his own travel and personal enrichment. Under these circumstances, there was evidence to support the trial court's finding that Chalk abandoned his opportunity

---

[11] See *Taylor v. Taylor*, 288 Ga. App. 334, 338 (2) (654 SE2d 146) (2007) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony.") (punctuation and footnote omitted).

8

interest,[12] and the court did not abuse its discretion in denying Chalk's legitimation petition.[13]

2. (a) Chalk contends that the trial court erred in awarding attorney fees and costs under OCGA § 19-9-3 (g), which Chalk argues only applies to custody cases. Because legitimation was denied, the court never addressed custody.

"Generally an award of attorney fees is not available unless supported by statute or contract."[14] OCGA § 19-9-3 (g) provides in relevant part:

> Except as provided in Code Section 19-6-2, and in addition to the attorney's fee provisions contained in Code Section 19-6-15, the judge may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge.

---

[12] See *Wilbourn*, 327 Ga. App. at 387 ("Factors supporting a finding of abandonment of a father's opportunity interest include, without limitation, a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and a lack of contact with the child.") (punctuation and footnote omitted).

[13] See *Smith v. Soligon*, 254 Ga. App. 172, 173-174 (2) (561 SE2d 850) (2002) (affirming denial of legitimation petition where biological father lived with child for several years, but provided no significant emotional or monetary support and maintained only sporadic contact after child moved away).

[14] *Sinkwich v. Conner*, 288 Ga. App. 320, 321 (654 SE2d 182) (2007).

"OCGA § 19-9-3 (g) affords wide discretion to the trial court to award reasonable attorney fees and expenses in child custody actions[.]"[15]

As the trial court noted in its order, Chalk's petition for legitimation included a prayer that the parties share joint legal custody of the children. The petition also included a prayer for "liberal visitation."

Chalk has provided no authority, and we have found none, to support his argument that OCGA § 19-9-3 (g) does not apply in legitimation cases[16] that include claims for custody or visitation.[17] "[W]hen a legitimation petition is filed[,] the amount of child support is one of the issues to be determined, along with custody and visitation."[18]

---

[15] *Moore v. Hullander*, ___ Ga. App. ___ (2) (d) (Case No. A18A0592, decided Apr. 25, 2018).

[16] Compare *Appling v. Tatum*, 295 Ga. App. 78, 83 (5) (670 SE2d 795) (2008) (reversing trial court's award of attorney fees because OCGA § 19-6-2 (a), which, by its plain language, governs the grant and enforcement of attorney fees in alimony and divorce cases, was not applicable to legitimation petition) (footnote omitted).

[17] See *Dellinger v. Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004) ("[V]isitation rights are a part of custody and changes in one parent's visitation rights necessarily affect the custodial rights of the other parent.") (citations omitted).

[18] *Dodson v. Walraven*, 318 Ga. App. 586, 591 (3) (734 SE2d 428) (2012) (footnote omitted).

OCGA § 19-7-22 (g) provides:

A legitimation petition may also include claims for visitation, parenting time, or custody. If such claims are raised in the legitimation action, the court may order, in addition to legitimation, visitation, parenting time, or custody based on the best interests of the child standard. In a case involving allegations of family violence, the provisions of paragraph (4) of subsection (a) of Code Section 19-9-3 shall also apply.[19]

Because Chalk requested visitation and joint legal custody in his legitimation petition, the trial court could have awarded visitation and custody under OCGA § 19-7-22 (g) concurrently with a grant of the legitimation petition. Thus, we conclude that the trial court had authority to award attorney fees and other costs "of the child custody action and pretrial proceedings" under OCGA § 19-9-3 (g).

(b) Chalk further complains that the trial court's inclusion of half of the guardian ad litem fees in its award to Poletto was inconsistent with its pronouncement

---

[19] OCGA § 19-7-22 (g).

11

at the bench trial. Chalk has cited no authority to support this argument,[20] which we find to be without merit.[21]

*Judgment affirmed. Barnes, P. J., concurs. McMillian, J., concurs fully and specially.*

---

[20] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[21] See *Wachovia Bank Savannah v. Kitchen*, 272 Ga. App. 601, 602 (612 SE2d 885) (2005) ("[A trial court is not bound by its oral statements made during the course of a hearing to the extent that such oral decisions cannot be changed prior to the time a final written order is entered."); *Andrew L. Parks, Inc. v. SunTrust Bank*, 248 Ga. App. 846, 847 (545 SE2d 31) (2001) (noting that a judgment is not entered until it is filed with the court clerk and that a trial judge has inherent power during the same term of court to modify a judgment, even sua sponte).

A18A0563. CHALK v. POLETTO

MᴄMɪʟʟɪᴀɴ, Judge, concurring specially.

I concur fully with the majority's opinion, but write separately to point out that

the statutory history of OCGA § 19-7-22 (g) and OCGA § 19-9-3 also supports that

a legitimation petition with a request for custody may also be considered a child

custody action such that attorney fees and expenses may be awarded under OCGA §

19-9-3.[1] In 2005, Section 19-7-22 was substantially amended, adding subsection (f.1),

which specifically allowed the petition for legitimation to include a claim for

---

[1] Statutory history is the "enacted lineage of a statute, including prior laws amendments, codifications, and repeals," and may be properly relied upon in discerning the plain meaning of the text of a statute, as opposed to legislative history. See *Duncan v. Rawls*, 345 Ga. App. 345, 350 (1), n.10 (812 SE2d 647) (2018); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256, 440 (2012) (distinguishing between statutory history and legislative history).

visitation or custody. 2005 Ga. Laws Act 413, § 1.[2] Prior to that time, custody issues could only be adjudicated in a legitimation proceeding by consent of the parties, and in the absence of the mother's consent, the father seeking a change in physical custody was required to file a separate proceeding after the judgment of legitimation was entered. See *Peterson v. Tyson*, 253 Ga. App. 431, 432 (559 SE2d 164) (2002). Subsequently, the General Assembly enacted OCGA § 19-9-3 (g), permitting attorney fees and expenses of litigation to be awarded in a child custody action. 2007 Ga. Laws Act 264.

Because it is presumed that the legislature acts with full knowledge of the existing state of the law,[3] it follows that the legislature was aware that the biological father could seek both legitimation and custody in the same proceeding when it enacted OCGA § 19-9-3 (g). Accordingly, I fully concur with the majority's conclusion that OCGA § 19-9-3 applies in legitimation cases that include claims for custody or visitation.

---

[2] Subsection (f.1) was subsequently redesignated as subsection (g) in 2016. See 2016 Ga. Laws Act 404.

[3] *Retention Alternatives, Ltd. v. Hayward,* 285 Ga. 437, 440 (2) (678 SE2d 877) (2009); *Duncan*, 345 Ga. App. at 349 (1), n.9.