**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 25, 2025**

# In the Court of Appeals of Georgia

A24A1271. SHEPPARD v. MILSAPS.

BARNES, Presiding Judge.

Stephanie Sheppard ("Mother"), the biological mother of the minor child, appeals from the trial court's order allowing Ernest Millsaps ("Father"), the biological father, to legitimate the child, granting Father joint legal custody and visitation, and awarding Mother child support. Mother contends that the trial court abused its discretion in granting Father's petition for legitimation and awarding him joint legal custody of the child. She further asserts that the court erred in calculating Father's child support obligation and the amount of back child support he owed. For reasons explained more fully below, we find that the trial court did not abuse its discretion in granting Father's petition for legitimation. We further find, however,

that the court erred when it failed to consider whether joint legal custody was in the child's best interest. And the trial court also erred in calculating Father's child support obligation as well as the amount of back child support owed. Accordingly, we affirm in part and vacate in part the final order and remand for further proceedings consistent with this opinion.

We review "a trial court's decision on a legitimation petition for abuse of discretion only," and in conducting that review, we view the evidence "in the light most favorable to the trial court's ruling." (Citations and punctuation omitted.) *Mathenia v. Brumbelow*, 308 Ga. 714, 715 (1) (843 SE2d 582) (2020). So viewed, the record shows that the parties had a brief romantic relationship in December 2016. In February 2017, Mother learned she was pregnant and she informed Father of that fact. She also informed him that he was the father of the child she was carrying. Father expressed skepticism over whether the child was his, because he believed Mother had been involved with another man and Father simultaneously.

Mother informed Father of the child's due date (October 13, 2017), and throughout her pregnancy, Mother kept Father informed of her doctor's appointments and invited him to attend the same. Although Father initially planned

to attend the 3-D ultrasound of the baby, shortly before the appointment began, he informed Mother that he would not be present. Nor did Father attend any of Mother's other doctor appointments. The only financial contribution Father made during the pregnancy was approximately $300, which Mother used to assist with her required insurance co-pays.

The child was born on September 22, 2017, but because Father was not in contact with Mother, she did not inform him of the birth. When the child was approximately seven weeks old, Father contacted Mother and learned of the child's arrival. Father asked Mother to obtain a paternity test for the baby, and after that test confirmed that he was the biological father, Father asked to see the child. Mother agreed, and between November 2017 and January 2019, Father visited with the baby on a regular basis.

After Mother declined to allow Father unsupervised visits with the infant, Father filed the underlying petition for legitimation, custody, and visitation in June 2018. The case was referred to mediation and, over Father's objection, the court appointed a guardian ad litem. During mediation, the parties agreed to a visitation schedule for Father, but could not reach a complete agreement because Father

objected to the amount of child support required of him under the statutory guidelines. When the case was referred back to the trial court, Father's attorney withdrew, and Father subsequently proceeded pro se.

At the final hearing, Mother testified that Father had 13 visits with the child between November 2017 and January 2019.[1] During this same time frame, she informed Father every time the child had a doctor's appointment, but Father attended none of those appointments. Nor did he send the child any gifts. After mediation failed, Mother, at the suggestion of her attorney, set up an account on the My Family Wizard Application ("the app") in February 2019. The app had a calendar on which Mother entered all of the child's doctor, dentist, and speech therapy appointments. She also entered on the app other relevant information pertaining to the child, including the name and contact information for his medical and dental providers and his school. Had Father elected to use the app, he could have obtained all of this information without ever having to contact Mother. Additionally, the app had a feature that allowed the parents to message each other. According to Mother, all of

---

[1] In the final order, the trial court found that Father had visited the child on a weekly basis between November 2017 and January 2019. In her brief, Mother does not challenge this finding.

this information was provided to Father on more than one occasion. Father, however, declined to use the app.

During his testimony, Father acknowledged that he had refused even to look at the app, explaining that his attorney told him he did not have to, because use of the app had not been ordered by the court. When asked why he objected to using the app, Father stated that he felt "no need" for it because the parties could contact each other directly. Father also admitted that he had made no effort in 2021 or 2022 to see the child, and that he had no contact with the child for at least three years prior to the final hearing. He insisted, however, that the only reason he was not in the child's life was because he refused to download the app. And he claimed that Mother would not answer his emails, which he sent periodically. Father admitted, however, that he had Mother's phone number and address, as well as contact information for her attorney. When asked why, if Mother was unresponsive, he had not contacted her attorney, Father responded, "because you guys recommended the app." After testifying that his objection to the app had resulted in him having no contact with the child for at least three years, Father stated that Covid 19 had also been "part of the problem."

5

Finally, Father acknowledged that mediation failed because he refused to agree to the amount of child support he would owe under the relevant statute.

Mother disputed Father's testimony that she required him to use the app to see the child, stating that she had never made use of the app a condition for father having contact with the child. She further explained that Father had been free to call or email her at any time to arrange a visit, but that he had declined to do so.[2] When questioned by the court, Mother stated that she believed children benefitted from having two parents. Her concern with respect to Father's presence in the child's life was his lack of consistency in attempting to establish a relationship with the child.

The guardian ad litem testified that in August 2021, when she submitted her initial report, she had recommended that the parents have joint legal custody. Since that time, however, Father had made no effort to have contact with the child. Thus, the guardian ad litem now believed that while Father should be allowed some visitation, Mother should be granted sole legal and physical custody. When asked whether, in her opinion, Father had done enough to maintain his opportunity interest

---

[2] Mother's brief conflicts with her hearing testimony. In her brief, she admits "that Father sent her emails in 2019 about seeing the [child] and [she] directed him to the [app,] which Father refused to use."

in a relationship with the child, the guardian ad litem responded that she believed he had not.

Father presented the testimony of both his adult daughter and his current wife concerning his fitness as a parent. The daughter testified that Father had been a good parent, and was a significant and active presence in her life and that of her brother, even after her parents divorced. The wife testified that Father was patient with, kind to, and nurturing towards her small grandchildren.

With respect to child support, the evidence showed that between November 2017 and July or August 2019, Father paid Mother approximately $500 per month to help support the child. After Father ceased making the payments, Mother filed an application for a warrant of abandonment in November 2019. Father thereafter sent Mother $100 and subsequently sent her between $50 and $100 every few months. Those payments ceased in October 2021, approximately six months before the final hearing.

In November 2018, approximately five months after he filed the underlying petition, Father filed a domestic relations financial affidavit showing a gross monthly income of $5,400.04. Although Father never filed an amended financial affidavit, he

testified at the final hearing that his current monthly income was "about $1500 a month." He explained that at the time he filed his financial affidavit, he was employed with a commercial trucking company. Father lost that job, however, after he was involved in an accident. Since that time, Father had not sought a job with another trucking company, although he continued to maintain his commercial license. Instead, Father had started his own business as a "cargo carrier." Father further testified that part of the income he earned from his business went into a business account, which paid for things like his insurance and his car note, and he did not consider those funds to be part of his income.

Shortly before the final hearing, Mother filed a financial affidavit showing that her income was $3,500 per month. She also filed a child support worksheet showing monthly fixed expenses for the child, including his school tuition, health, dental and vision insurance, and speech therapy sessions. . Additionally, Mother introduced receipts for items purchased for the child, including things such as clothing, bedding, diapers, baby furniture, and toys. The receipts totaled $44,125.09, and Mother explained that the purchases had been financed with credit cards, leaving her with approximately $40,000 in debt.

Following the final hearing, the trial court entered an order granting Father's petition for legitimation, awarding Father visitation with and joint legal custody of the child, requiring Father to pay $470 per month in child support, and awarding Mother $13,237.50 in back child support. Mother now appeals from that order.[3]

1. In her first enumeration of error, Mother asserts that the trial court erred in granting Father's petition to legitimate the child and in granting him joint legal custody of the child. We address each of these arguments below.

(a)  *Legitimation*

As Georgia law recognizes, a biological father has a constitutionally-protected opportunity interest to develop a relationship with a child born out of wedlock. *Chalk v. Poletto*, 346 Ga. App. 491, 494 (1) (816 SE2d 432) (2018) "This opportunity interest begins at conception and endures probably throughout the minority of the child. But it is not indestructible. It may be lost. It is an interest which can be abandoned by the

---

[3] The trial court entered the final order on October 18, 2022, and Mother then filed a timely appeal, which was docketed in this Court. Through no fault of Mother, however, there were problems with the appellate record. Accordingly, we remanded the case for correction and completion of the record and directed the Clerk of this Court to re-docket the case after a complete record was filed. *Sheppard v. Millsaps*, Case No. A23A1648 (March 14, 2024). The current appeal was docketed on April 3, 2024.

unwed father if not timely pursued." Id. Thus, a court considering a legitimation petition must first "determine whether the father has abandoned his opportunity interest to develop a relationship with the child." (Citation and punctuation omitted.) *Neill v. Brannon*, 320 Ga. App. 820, 821 (1) (738 SE2d 724) (2013). Where "the evidence supports a finding that a father has abandoned his opportunity interest in developing a relationship with his biological child, then the court is authorized to end its inquiry and to deny the legitimation petition on that basis." Id at. 821-822 (1). If, however, the evidence shows that the father has not abandoned his opportunity interest, the court may grant the petition if the evidence shows that legitimation is in the child's best interests. See OCGA § 19-7-22 (d) (1); *Westbrook v. Eidys*, 356 Ga. App. 619, 623-624 (3) (848 SE2d 660) (2020).

(i) Mother contends that the trial court erred in concluding that Father had not abandoned his opportunity interest to develop a relationship with the child. . We disagree.

In determining whether a father has abandoned his opportunity interest, a court must examine a number of factors, including whether the father assisted the mother during her pregnancy, was present for the birth, and timely filed a legitimation

petition. *Wilbourn v. Lumpkin*, 327 Ga. App. 385, 387 (759 SE2d 262) (2014). A court should also consider whether the father has provided financial support for the child and whether he has made an effort to maintain a presence in the child's life. Id. See also *Westbrook*, 356 Ga. App. at 622 (1). In its findings of fact, the trial court acknowledged that Father was not present during Mother's pregnancy or at the child's birth. The court also found that Father had not seen the child since January 2019. Finally, the court found that Father's financial contribution towards the child's support had been sporadic, and that he had provided no support during the year preceding the hearing.

Mother argues that these factual findings required the trial court to conclude that Father had abandoned his opportunity interest in a relationship with the child. She also asserts that the trial court ignored the evidence that she was forced to file an abandonment claim against Father to obtain even token financial support and that Father had yet to sign the child's birth certificate. Mother further claims that the trial court failed to credit her testimony that Father was free to contact her at any time to arrange a visit, but instead elected to forego contact with the child.

Mother's arguments on this issue ignore the standard of review applicable to a legitimation petition. As noted above, "we review a trial court's ruling on a legitimation petition [only] for abuse of discretion." (Citation and punctuation omitted.) *Wilbourn*, 327 Ga. App. at 386. Such an abuse "occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citation and punctuation omitted.) *Copeland v. Copeland*, 361 Ga. App. 125, 129 (1) (863 SE2d 509) (2021). When determining whether the trial court abused its discretion, we defer to that court's ability to assign weight to the evidence and to judge the credibility of the witnesses. *Chalk*, 346 Ga. App. at 495, n. 11 (in a legitimation case, the "[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact") (citation and punctuation omitted). And "with respect to evidence of record not referenced in a trial court's findings of fact," we must assume that the trial court chose to assign no weight to that evidence, including testimony it may have found not credible. *Mathenia*, 308 Ga. at 715-716 (1). See also *Chalk*, 346 Ga. App. at 495, n. 11 ("The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony.") (citation and punctuation omitted).

12

Here, in addition to the findings of fact cited by Mother, the trial court also found that Father's lack of involvement in Mother's pregnancy resulted from his uncertainty as to the child's paternity. Once paternity was established, however, Father immediately made an effort to have contact with the child, and between November 2017 and January 2019 he visited with the child as much as Mother would permit. Moreover, Father filed a legitimation petition when the child was approximately seven months old. And Father's contact with the child continued until mediation between the parties failed. The court found that at that time, Father's legal counsel withdrew from the case, and the parties ceased communicating with one another. This lack of communication resulted in part from Father's refusal to use the My Family Wizard app and in part because Mother declined to respond to communications sent outside of the app. Finally, the trial court found that beginning in early 2020, the potential for visits between Father and the child were disrupted by the Covid-19 pandemic.

Read as a whole, the trial court's factual findings support the conclusion that Father did not abandon his opportunity interest in forming a relationship with the child. Specifically, they show that Father moved timely to legitimate the child and

provided the mother with some support for the child. He also initially worked to maintain contact with the child, but those efforts were frustrated by his and Mother's difficulties in communicating and the occurrence of the Covid pandemic. Given that the trial court's conclusion is supported by some evidence of record, "we cannot say that the trial court abused its discretion in determining that [Father] did not abandon his opportunity to form a relationship with the child." *Westbrook*, 356 Ga. App. at 622 (1).

(ii) As noted above, following a hearing on a legitimation petition, a court may issue an order granting that petition "provided that such order is in the best interests of the child." OCGA § 19-7-22 (d) (1). "In determining whether legitimation is in the best interest of the child, the court must examine the benefits that might flow to the child if [he] were legitimated and consider the legal consequences of the grant of the petition." (Citation and punctuation omitted.) *Neill*, 320 Ga. App. at 826 (2).

Here, Mother contends that given Father's "absenteeism" during most of the child's life, the trial court erred in finding that legitimation was in the child's best interest. Again, we disagree. To support its conclusion that legitimation was in the best interest of the child, the lower court noted the testimony of Father's adult

14

daughter, with whom Father maintains a close relationship. Specifically, the court referenced the daughter's testimony that both she and her brother had benefitted from Father's continued involvement in their lives following Father's divorce from her mother. The court also relied on the testimony of Father's current wife concerning her observations of Father's interactions with his adult children, as well as her minor grandchildren. Additionally, the court noted that Father was stable and gainfully employed, and concluded that there "are benefits that will flow to the minor child from the development of a relationship with [Father]."

Given that some evidence supported the trial court's finding that legitimation was in the child's best interests, we find no reversible error.[4]

(b) *Legal Custody*

The Georgia Code provides, in relevant part,

[t]he [trial] judge hearing the issue of custody shall make a determination of custody of a child and such matter shall not be decided by a jury. The judge may take into consideration all the circumstances of the case, . . . [i]n determining to whom custody of the child should be awarded. The

---

[4] We note that Mother's own testimony supported the trial court's conclusion that legitimation was in the child's best interest. Specifically, Mother testified that she believed a child would benefit from having two parents in his or her life.

duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly.

OCGA § 19-9-3 (a) (2).

Citing this statute, Mother contends that the trial court erred in granting Father joint legal custody of the child without determining that such an award was in the child's best interest. We agree. The language of OCGA § 19-9-3 (a) (2) is mandatory — i.e., it requires that the trial court determine whether a grant of custody is in a child's best interest. See *Westbrook*, 356 Ga. App. at 624 (3) (in a legitimation action, trial court erred in failing to analyze whether an award of joint custody was in the best interest of the child). In reaching this conclusion, we recognize that the trial court found that having a relationship with Father was in the child's best interest. The question of whether a parent and child should have a relationship, however, is different than the question of whether a parent with whom the child has had a minimal contact should have legal custody of that child. See OCGA § 19-9-22 (1) ("'Legal custody' means the responsibility for the care and control of a minor, including, but not limited to, the power to make decisions regarding health care, education,

extracurricular activities, and religious upbringing.") Accordingly, we vacate that portion of the trial court's order granting Father joint legal custody and remand for the trial court to consider whether, given the circumstances of this case, such a custody order is in the best interest of the child.

2. Mother argues that the trial court erred in calculating the amount of Father's child support obligation. Specifically, she claims that the finding as to Father's gross monthly income was not based on reliable evidence of the same. Mother further asserts that the trial court failed to make any adjustments to the support award based on her payment of the child's health insurance premiums. We agree with Mother and find that the trial court committed legal error in calculating the child support award.

(a) Under Georgia law, a child support calculation shall be based upon the gross income of the parents. OCGA § 19-6-15 (b) (1). See also *Cousin v. Tubbs*, 353 Ga. App. 873, 880 (3) (a) (i ) (840 SE2d 85) (2020) ("In Georgia, determining each parent's monthly gross income is the first step that a court must take in calculating child support under our child support guidelines.") (Citation and punctuation omitted.) Thus, each parent must produce reliable evidence of income sufficient to allow the trial court to calculate his or her adjusted gross income, using the factors set forth in

17

OCGA § 19-6-15 (b) (2). Pursuant to the relevant statute, reliable evidence of income includes items "such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support[.]" OCGA § 19-6-15 (f) (4) (A). Additionally, to assist the trial court in its calculations, Uniform Superior Court Rule 24.2 requires that "at least 5 days before any temporary or final hearing in any action for temporary or permanent child support, . . . all parties shall serve upon the opposing party" a domestic relations financial affidavit, using the form set forth in the Rules. Additionally, the parties are also required to submit, contemporaneously with their financial affidavit, the completed worksheets and schedules required by OCGA § 19-6-15. See Ga. Unif. Super. Ct. R. 24.2.

In this case, Father filed a financial affidavit in November 2018 showing his gross monthly income was $5,411.04. Although Father never submitted an amended financial affidavit, he testified at the final hearing that, because of a change in employment, his monthly income was "about $1500." Notably, however, Father presented no financial documents — such as tax returns or bank statements — to support his claimed reduction in income. Moreover, Father testified that some portion of the money generated by his solely-owned business when into his "business

18

account," and was used to pay expenses such as his vehicle and insurance payments. Based solely on Father's testimony, the trial court found his gross monthly income was $1,500, and used that figure to calculate his child support obligation.

Father's testimony concerning his approximate monthly income, however, as well as his statement that some undetermined amount of money he earned went into a business account, did not constitute reliable evidence sufficient to support the trial court's finding. Accordingly, we vacate the trial court's child support award and remand the case for further proceedings on this issue. On remand, the trial court should require Father to submit an updated financial affidavit with supporting documentation, such as tax returns or bank statements. The trial court should also require Father to provide the other documents required by both OCGA § 19-6-15 and Uniform Superior Court Rule 24.2. Finally, the trial court should review the income placed in Father's business account under the guidelines set forth in OCGA § 19-6-15 (f) (1) (B) to determine whether any of those funds should be included in Father's gross income.

(b) In calculating child support, the trial court was required to divide the cost of the child's health insurance premiums between the parents on a pro rata basis and

include Father's portion in the child support award. See OCGA § 19-6-15 (h) (2) (A) (iii). The trial court, however, failed to include the child's health insurance costs when calculating the child support award. For this additional reason, therefore, we must vacate the child support award. See *Dupree v. Dupree*, 287 Ga. 319, 322-323 (5) (695 SE2d 628) (2010) (reversing an award of child support where the trial court failed to include father's payment of health insurance costs in its calculation of his child support obligation); *Bridger v. Franze*, 348 Ga. App. 227, 232 (3) (a) (820 SE2d 223) (2018) ("Because the trial court failed to include the mother's payment of health insurance premiums in calculating the amount of the father's child support obligation, we reverse the award of child support and remand the case to the trial court to factor that consideration into the child support order.")

3. We also agree with Mother that the trial court erred in calculating the award of back child support.

Georgia law allows a custodial parent to "recover back child support reflecting a portion of the actual expenses incurred by the custodial parent" in caring for the minor child. *Ynetma v. Smith*, 372 Ga. App. 291, 292 (1) (902 SE2d 691) (2024). And in determining the percentage of those expenses for which the non-custodial parent

is responsible, the trial court must apply the statutory child support guidelines. Id. See also *Day v. Mason*, 357 Ga. App. 836, 839 (1) (851 SE2d 825) (2020). Thus, because we are vacating the child support award based on the lack of reliable evidence as to Father's income, we must also vacate the award of back child support. On remand, the trial court should enter a new award, based on the pro rata share of child support for which Father is responsible.

For the reasons set forth above, we affirm that part of the trial court's order granting Father's petition for legitimation. We vacate those parts of the order granting Father joint legal custody of the child and awarding Mother child support and back child support, and we remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part; vacated and remanded in part. Land and Watkins, JJ., concur.*